**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

JOY M. OVERTON,

              Plaintiff,

-vs-                                                  Case No.  5:10-cv-221-Oc-18JRK

MICHAEL J. ASTRUE, Commissioner of
Social Security,

              Defendant.
_____/

## **REPORT AND RECOMMENDATION**[1]

### **I. Status**

Joy M. Overton ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for a period of disability and disability insurance benefits ("DIB"). She alleged an inability to work based on the impairments of panic attacks, multiple joint arthritis, lumbar spine impairment, and hip injury. Transcript of Administrative Proceedings (Doc. No. 10; "Tr.") at 68, 82.

On January 29, 2003, Plaintiff filed an application for a period of disability and DIB, alleging a disability onset date of August 31, 2001, which was later amended to January 9, 1998. Tr. at 68-71, 703-04, 743. Plaintiff was insured for benefits through December 31,

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida ("Local Rule(s)"), within fourteen (14) days after service of this document. Failure to file timely objections waives a party's right to de novo review. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Local Rule 6.02(a).

2004. Tr. at 72. The Social Security Administration ("SSA") denied Plaintiff's application initially and upon reconsideration. Tr. at 42-43, 47-48, 57, 59.

Plaintiff then requested and received a hearing before ALJ R. Neil Lewis on August 2, 2005. Tr. at 654-67. ALJ Lewis issued his decision on October 31, 2005, denying Plaintiff's claim for benefits. Tr. at 326-30. The Appeals Council granted review and remanded the case back to an ALJ for further proceedings. Tr. at 337-40, 582. ALJ Robert D. Marcinkowski held a supplemental hearing on October 11, 2006, during which Plaintiff testified and was represented by counsel. Tr. at 668-704. On January 22, 2007, ALJ Marcinkowski issued his decision, finding Plaintiff not disabled and denying her claim. Tr. at 566-76.

Once again the Appeals Council granted review and remanded the case to the ALJ. Tr. at 579-81. ALJ Marcinkowski conducted a supplemental hearing on August 5, 2008, during which Plaintiff, Alfred Jonas, M.D., an impartial medical expert, and David Pigue, a vocational expert ("VE") testified. Tr. at 705-44. On November 13, 2008, the ALJ issued this final decision, finding Plaintiff not disabled and denying her claim. Tr. at 26-40. Plaintiff filed a Request for Review by the Appeals Council, which was denied on April 2, 2010. Tr. at 10-13. Accordingly, ALJ Marcinkowski's November 13, 2008 decision was the final decision of the Commissioner. Tr. at 10. On May 21, 2010, Plaintiff timely filed her Complaint with this Court. (Doc. No. 1.) Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

On appeal, Plaintiff argues that the ALJ failed to properly consider the evidence related to Plaintiff's mental impairments. See generally Plaintiff's Memorandum of Law in

Support of Her Position (Doc. No. 12; "Pl.'s Mem."), filed October 4, 2010. Specifically, Plaintiff argues that the ALJ erred by: (1) failing to articulate good cause for discrediting the opinion of Dr. Najib Kirmani, one of Plaintiff's treating psychiatrists at LifeStream Behavioral Center ("LifeStream") (id. at 13-16); (2) mischaracterizing the testimony of medical expert Dr. Jonas (id.); and (3) failing to discuss the functional capacity opinion of treating psychiatrist Dr. Dedyani Desai (id. at 16-17). After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the ALJ failed to properly consider the opinions of Plaintiff's treating psychiatrists. Accordingly, it is recommended that the ALJ's Decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## II. The ALJ's Decision

When determining whether an individual is disabled, an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the plaintiff (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See 20 C.F.R. §§ 404.1520 and 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ performed the required five-step sequential analysis. Tr. at 28-40. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her

alleged onset date of January 9, 1998 through her date last insured of December 31, 2004. Tr. at 28. At step two, the ALJ determined that Plaintiff had the following severe impairments: osteoarthritis of the lower back, left hip, and left upper extremity; an anxiety disorder; and a personality disorder. Tr. at 28-30. At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). Tr. at 31.

Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

lift/carry 20 pounds occasionally, 10 pounds frequently, and that she could stand, walk, or sit for about 6 hours each, in an 8-hour workday, with occasional limitations with climing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes or scaffolds; frequent use of the bilateral upper extremities to push and/or pull; occasional reaching with left upper extremity; frequent feeling with right upper extremity, and, must avoid concentrated exposure to hazards. From a mental standpoint, the claimant retained the ability to understand, remember, and, carry out simple instructions, and, have only occasional interaction with others.

Tr. at 31.

At step four, the ALJ relied on the testimony of the VE in finding that Plaintiff is unable to perform any past relevant work – i.e., paint inspector, paint sprayer, and team leader at General Motors Corp. Tr. at 36. Then, at step five, the ALJ determined there were other jobs that existed in significant number in the national economy that Plaintiff could perform, considering her age, education, work experience and RFC. Tr. at 37-28. Thus, the ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social

Security Act from January 9, 1998, the amended disability onset date, through December 31, 2004, the date last insured. Tr. at 38, 40.

### III.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988)(citing Richardson v. Perales, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g).  Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995)(per curiam)(internal citations omitted); see also Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)(per curiam)("Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'")

When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991)(per curiam.)  "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote, 67 F.3d at 1560, see also Lowery v. Sullivan, 979 F.2d

835, 837 (11th Cir. 1992)(stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings.)

## IV.  Discussion

First, Plaintiff argues that the ALJ failed to articulate good cause for discrediting the treating opinions of Dr. Kirmani. Pl.'s Mem. at 13-16. On March 6, 2003, Dr. Kirmani completed a Psychiatric/Psychological Impairment Questionnaire. Tr. at 207-14.[2] Dr. Kirmani confirmed Plaintiff's diagnoses of post traumatic stress disorder and panic disorder with agoraphobia. Tr. at 207. He assigned a current Global Assessment of Functioning ("GAF") score[3] of 45 and noted that her highest GAF during the past year had been 45. Tr. at 207. Dr. Kirmani identified numerous clinical findings that supported his diagnosis: appetite disturbance with weight change; sleep disturbance; personality change; mood disturbance; emotional lability; recurrent panic attacks; feelings of guilt/worthlessness; difficulty thinking or concentrating; social withdrawal or isolation; decreased energy; intrusive recollections of a traumatic experience; persistent irrational fears; and generalized persistent anxiety. Tr. at 208. He listed Plaintiff's primary symptoms as "[p]anic attacks, times can't breathe - unable to ride in cars or attend social functions or church. Overall feeling of anxiety - temper outbursts, mood swings." Tr. at 209. Dr. Kirmani opined that Plaintiff had a number

---

[2] Although addressed to "Dr. L. Guy" (Tr. at 207), the form was signed by Dr. Kirmani (Tr. at 214).

[3] The GAF scale describes an individual's "overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations." Mathis v. Astrue, No. 3:06-cv-816-J-MCR, 2008 WL 876955, at *7, n. 4 (M.D. Fla. Mar. 27, 2008)(unpublished)(citing Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) at 32).

of marked limitations including her ability carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; and complete a normal workweek without interruptions for psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. at 210-11.

On November 6, 2003, Dr. Kirmani completed a "Treating Psychiatrist/Psychologist Mental Health Report" in which he noted that Plaintiff's concentration was "not good"; confirmed her diagnosis of panic disorder; opined that Plaintiff was not competent to manage independently her own benefits; and noted that Plaintiff "claims inability to work due to panic attacks and social phobia." Tr. at 282-83.

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary. Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records."). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. Edwards v. Sullivan, 937 F.2d 580, 584 (finding that the ALJ properly discounted a treating physician's report when the physician was unsure of the accuracy of his findings and statements). When a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986).

Here, the ALJ discussed Dr. Kirmani's opinions and declined to accord them "great probative weight." Tr. at 30. The ALJ articulated three reasons for not according "great probative weight" to Dr. Kirmani's March 6, 2003 opinion. First, he noted that Dr. Kirmani's assessments were "based on very limited treatment." Tr. at 34. However, the record shows (and the Commissioner acknowledges (see Memorandum in Support of the Commissioner's Decision (Doc. No. 14; "Def.'s Mem.") at 6-14)) that Dr. Kirmani treated Plaintiff at least three times, over the course of several months, prior to rendering his March 2003 opinion (Tr. at 423-24 (duplicates at Tr. at 239, 243), 434, 436) and another five times before rendering his November 2003 opinion (Tr. at 418-22, 474-76 (duplicates at Tr. at 235-37), 477). The duration of this treatment, standing alone or together with the other reasons listed by the ALJ, does not offer good cause for rejecting Dr. Kirmani's opinion.

Second, the ALJ noted that while Dr. Kirmani assessed Plaintiff's GAF score as 45 on March 5, 2002, other records from Lifestream Behavioral Center on that same date showed a GAF of 50. Tr. at 30. According to the ALJ, "this disparity sheds some doubt as to the reliability of the LifeStream estimates." Tr. at 30. The ALJ suggested that GAF scores

-8-

of 55 on March 5, 2002 and March 19, 2002 are more reflective of Plaintiff's functioning and undermine Dr. Kirmani's assessment of 45 on March 5, 2002. Tr. at 30. However, as Plaintiff correctly points out, the GAF score of 55 on March 5, 2002 was unsigned (Tr. at 261), and the score of 55 dated March 19, 2002 apparently was rendered by a nurse (Tr. at 251).

The ALJ also stated that Dr. Kirmani's assessment is inconsistent with "most of the other" GAF scores in the longitudinal record which ranged between 50-55. Tr. at 34. Even assuming this is true for the sake of argument, any GAF score assigned by Dr. Kirmani or anyone else would be entitled to limited weight in determining Plaintiff's functional limitations. Although GAF scores frequently have been cited in Social Security disability benefits determinations, "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that the GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005)(unpublished)(quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746-01, 2001 WL 1173632 (Aug. 21, 2000)). Indeed, as noted by a court in this district, "[r]eliance upon a GAF score is of questionable value in determining an individual's mental functional capacity." Gasaway v. Astrue, No. 8:06-cv-1869-T-TGW, 2008 WL 585113, at *4 (M.D. Fla. Mar. 3, 2008)(unpublished)(citing DeBoard v. Commissioner of Social Security, 211 F. App'x at 415-16). Therefore, even if Dr. Kirmani's GAF assessment was somewhat inconsistent with other GAF assessments in the record, that alone, or in combination with the other reasons stated by the ALJ, does not constitute good cause for rejecting Dr. Kirmani's

opinions regarding Plaintiff's mental functional capacity given the "questionable value" of GAF scores.

Third, the ALJ found Dr. Kirmani's opinion regarding concentration, persistence and pace inconsistent with the findings of Dr. Alfred G. Jonas, the medical expert who testified at the supplemental hearing. Tr. at 30, 34. The ALJ noted *inter alia* that Dr. Jonas testified that Plaintiff's ability to "adequately maintain her concentration, attention and pace were intact." Tr. at 30. However, that is not an entirely accurate recitation of Dr. Jonas's testimony. Rather, Dr. Jonas testified that based on his review of the limited medical records he was "not sure about concentration, persistence [and] pace" and that he could not confirm the "pessimistic estimations" by various psychiatrists, including Dr. Kirmani. Tr. at 716-17.[4] Thus, Dr. Jonas's opinion – in which he openly acknowledges that he cannot render an opinion one way or the other about various estimations contained in the record regarding concentration, persistence, and pace – does not constitute good cause for rejecting Dr. Kirmani's opinion as a treating physician, standing alone or in combination with the other reasons offered by the ALJ.

---

[4] Later, in apparently attempting to summarize Dr. Jonas's testimony, the ALJ asked Dr. Jonas:

> Q. And the difficulties maintaining concentration, persistence in pace could not determine [sic] except that it appears everything appeared to be intact.
> A. What we can see in the record appears intact.

Tr. at 718. Dr. Jonas's affirmative response to this question appears to contradict his own statement that he cannot render an opinion with regard to concentration, persistence, and pace.

-10-

Accordingly, upon a review of the ALJ's decision, as well as an examination of the medical records at issue, the Court finds that the ALJ failed to articulate good cause for rejecting the opinions of Dr. Kirmani as a treating physician.

Lastly, Plaintiff argues that the ALJ failed to consider the opinion of Dr. Desai, another psychiatrist who treated Plaintiff at Lifestream. Pl.'s Mem. at 16-17. On August 25, 2005, Dr. Desai completed a Psychiatric/Psychological Impairment Questionnaire in which he confirmed Plaintiff's diagnosis of post traumatic stress disorder and assigned a GAF of 50. Tr. at 521-28. Dr. Desai opined that Plaintiff was moderately to markedly limited in sustaining concentration and persistence and markedly limited in all measures of social interaction and adaptation. Tr. at 524-25.

While acknowledging that the ALJ did not expressly mention Dr. Desai's opinion, the Commissioner, nonetheless, argues that the ALJ considered it because he found that evidence which post dates the date last insured was "'generally non-relevant.'" Def.'s Mem. at 12 (quoting Tr. at 36). Evidence post-dating an individual's insured status may be relevant and properly considered if it bears "upon the severity of the claimants condition before the expiration of his or her insured status." Ward, 2008 WL 1994978, at 4. Here, Plaintiff's date last insured was December 31, 2004. While Dr. Desai's opinion was rendered eight months after the date last insured, Dr. Desai took over Plaintiff's ongoing care at LifeStream and began treating Plaintiff on January 20, 2005, within weeks of her date last insured. Tr. at 413. Moreover, Dr. Desai noted in his August 25, 2005 opinion that Plaintiff's limitations date back to 1988. Tr. at 528. Because Dr. Desai's opinion appears to bear upon Plaintiff's condition prior to the expiration of her insured status, the ALJ was required to state with

particularity the weight given to Dr. Desai's treating opinion, and the reasons therefore. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).  His failure to do so was reversible error.

### V.  Conclusion

For the reasons discussed above, the ALJ failed to properly consider the opinions of Plaintiff's treating psychiatrists.  In accordance with the foregoing, it is respectfully **RECOMMENDED**:

1. That the Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING the Commissioner's** decision and **REMANDING** the Commissioner's final decision with directions to reevaluate the opinions of Plaintiff's treating psychiatrists, Dr. Kirmani and Dr. Desai; and to take such other action as may be necessary to resolve this claim properly.

2. That the Clerk of Court be directed to close the file.

3. That Plaintiff's counsel be granted thirty (30) days from receiving notice of the amount of past due benefits to seek the Court's approval of attorney's fees pursuant to 42 U.S.C. § 406(b), in the event that benefits are awarded on remand.  See Bergen v. Comm'r Soc. Sec., 454 F.3d 1273 (11th Cir. 2006).

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida, on August 1, 2011.

*/s/ James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

Copies to:

The Honorable G. Kendall Sharp
Senior United States District Judge

Counsel of record