UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOY M. OVERTON,

                Plaintiff,

-vs-                                         Case No. 5:10-cv-221-Orl-18JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

_____

## ORDER

THIS CAUSE comes for consideration on Plaintiff Joy M. Overton's appeal from a final decision of the Commissioner of Social Security ("Commissioner") denying Overton's claim for Social Security Disability Insurance Benefits ("DIB"). (Doc. 1, filed May 21, 2010.) The Commissioner responded in opposition (Doc. 9, filed Aug. 4, 2010) and filed a certified copy of the record with the Social Security Administration ("SSA"). (Doc. 10, filed Aug. 5, 2010.) An Administrative Law Judge ("ALJ") determined that, for purposes of the Social Security Act, Overton was not disabled between her alleged disability onset date and her date last insured ("DLI") and therefore should not receive DIB. (Doc. 10 at 40.) For the following reasons, this Court affirms the Commissioner's decision.

### I. BACKGROUND

On January 29, 2003, Overton filed an application for DIB, alleging August 31, 2001 as her disability onset date. (R. 68-71.) She later amended her alleged disability onset date to

January 9, 1998. (R. 703-04.) Overton's DLI was December 31, 2004. (R. 72.) The SSA denied Overton's first application. (R. 42-43.) After reconsideration, the SSA denied Overton's application again. (R. 57, 59.)

Overton requested a hearing before an ALJ. (R. 54.) After Overton's August 2, 2005 hearing, the ALJ denied Overton's claim. (R. 326-30.) Overton requested that the Appeals Council review the ALJ's decision, and the Appeals Council remanded the case to an ALJ for further proceedings. (R. 337-40.) After another hearing on October 11, 2006, an ALJ denied Overton's claim a second time. (R. 566-76.) The Appeals Council granted review of Overton's case for the second time and remanded it to the ALJ. (R. 579-81.) An ALJ held a third hearing on August 5, 2008. (R. 705.) Following the hearing, the ALJ found Overton not disabled and denied her claim. (R. 40.) Overton requested that the Appeals Council review the ALJ's decision, but the Appeals Council denied her request. (R. 10-12.) Overton now appeals to this Court.[1]

## II. STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); see also 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth

---

[1] Because Overton has exhausted her administrative remedies, this Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).

v. Heckler, 703 F.2d 1233, 1239 (11th Cir.1983) (citing, *inter alia*, Richardson v. Perales, 402 U.S. 389, 401 (1971)). A court reviewing the Commissioner's decision "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Id. "If the Commissioner's decision is supported by substantial evidence, [a reviewing court] must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).

Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid. Keeton v. Dept. of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir.1991), and Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir.1990)). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." Id. (citing Cornelius, 936 F.2d at 1146, and Martin, 894 F.2d at 1529).

### III. DISCUSSION

To be entitled to DIB, a claimant must be unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. See 42 U.S.C. § 1382c(a)(3)(A). The Social Security regulations set forth a "five-step sequential evaluation process" for an ALJ to follow in determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). The ALJ must determine whether: (1) the claimant is performing substantial gainful activity; (2) the claimant suffers from a severe impairment or a combination of

impairments that is severe; (3) the claimant's impairments meet or equal an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"); (4) the claimant can perform his past relevant work; and (5) based on the claimant's age, education, and work experience, he could perform other work of the sort found in the national economy. Id. § 404.1520(a)(4)(i-v).

If a claimant's impairment does not meet or equal an impairment specifically listed in Appendix 1, her residual functional capacity ("RFC")[2] is assessed and used at steps four and five. Id. § 404.1520(e). If the claimant can make an adjustment to other work, the ALJ will find that he is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). Disability can be found at either step three (without proceeding to steps four and five) or at step five.

In this case, the ALJ determined that Overton did not engage in any substantial gainful activity between her alleged disability onset date and her DLI. (R. 28.) At the second step, the ALJ found that Overton had, through her DLI, the following severe impairments: "osteoarthritis of the lower back, left hip, and left upper extremity; an anxiety disorder, and a personality disorder . . . ." (Id.) At step three, the ALJ found that, through her DLI, Overton did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (R. 31.) At step four, the ALJ found that, through Overton's DLI, she had the RFC:

> to lift/carry 20, pounds occasionally, 10 pounds frequently, and that she could stand, walk, or sit for about 6 hours each, in an 8-hour workday, with occasional limitations with climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes or scaffolds;

---

[2] The RFC is an assessment, based upon all relevant medical and other evidence in the case record, of a claimant's ability to do work despite her limitations. Phillips, 357 F.3d at 1238.

-4-

>frequent use of the bilateral upper extremities to push and/or pull; occasional reaching with left upper extremity; frequent feeling with right upper extremity, and, must avoid concentrated exposure to hazards. From a mental standpoint, the claimant retained the ability to understand, remember, and, carry out simple instructions, and, have only occasional interaction with others.

(R. 31.) Based on Overton's RFC, the ALJ found that, prior to her DLI, Overton was unable to perform past relevant work. (R. 36.) However, at step five, the ALJ found that, prior to Overton's DLI, there were jobs that existed in significant numbers in the national economy that Overton could perform given her age, education, work experience, and RFC. (R. 37.) Based on the five-step process, the ALJ concluded that, for purposes of the Act, Overton was not disabled between her alleged disability onset date and DLI. (R. 38.)

Overton raises two issues on appeal. First, she argues that the ALJ erred in failing to give adequate weight to Dr. Najib Kirmani's opinions, which relate to the severity of Overton's impairments and her RFC. Second, she argues that the ALJ erred in failing to give adequate weight to Dr. Dedyani Desai's opinions, which also relate to the severity of Overton's impairments and her RFC.

The ALJ must give a treating physician's opinion substantial or considerable weight unless good cause is shown for not doing so. Phillips, 357 F.3d at 1240 (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause exists when "the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Id. (citing Lewis, 125 F.3d at 1440). "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." Id. (citing Lewis, 125 F.3d at

1440). In this case, the ALJ articulated good cause for declining to give great probative weight to Dr. Kirmani's opinions as well as Dr. Desai's opinions.

*A. Dr. Kirmani's Opinions*

The ALJ articulated three reasons for declining to afford great probative weight to Dr. Kirmani's opinions. First, the ALJ stated that Dr. Kirmani's opinions were based on "very limited treatment." (R. 34.) Overton seeks support for her disability claim in two records by Dr. Kirmani: a March 2003 Psychiatric/Psychological Impairment Questionnaire prepared for Overton's attorney and a November 2003 Treating Psychiatrist/Psychologist Mental Health Report prepared for the SSA. (R. 206-14, 282-83.) The record reflects that Dr. Kirmani met with Overton three times prior to completing the March 2003 questionnaire. (R. 423-24, 434.) The record also reflects that, during these visits, Dr. Kirmani did no more than record Overton's subjective complaints and prescribe medication. (Id.) The records Dr. Kirmani created before his November 2003 report reflect more of the same—that Dr. Kirmani prescribed medications and recorded Overton's subjective complaints. (R. 418-22.) These records contain no evidence of objective testing. During many of Overton's visits, Dr. Kirmani did not complete the entire evaluation form. (Id.)

Moreover, Dr. Kirmani's November 2003 report to the SSA contains omissions that also suggest Dr. Kirmani's treatment of Overton was limited. Dr. Kirmani failed to discuss Overton's prognosis as requested in item two of the November 2003 report. (R. 283.) Item four requested Dr. Kirmani discuss any other data he used in formulating Overton's diagnosis; however, Dr. Kirmani failed to provide any other data. (Id.) In response to item five, which requested Dr.

Kirmani's assessment of "what [Overton] can still do despite [her] mental impairment(s), addressing [Overton's] capacity for understanding and memory, sustained concentration and persistence, social interaction, and adaption," Dr. Kirmani merely reiterated Overton's subjective complaints rather than provide his own assessment or other details. (Id.) Also, Dr. Kirmani stated that Overton had no history of substance abuse; however, Overton's medical records reflect her history of substance abuse. (R. 143, 283.) In sum, the record supports the ALJ's characterization of Overton's treatment by Dr. Kirmani as "limited." Therefore, the ALJ had good cause for declining to afford great probative weight to Dr. Kirmani's opinions.

Second, the ALJ declined to afford great probative weight to Dr. Kirmani's opinion because the Global Assessments of Functioning ("GAF") scores Dr. Kirmani assigned for Overton were inconsistent with other GAF scores in the record. On March 5, 2002, Overton's GAF was assessed at 50. (R. 261.) On March 19, 2002, it was 55. (R. 251.) On February 19, 2003, Dr. Kirmani assessed Overton's GAF at 55. (R. 240.) On, March 6, 2003, Dr. Kirmani assessed Overton's GAF at 45. (R. 207-14.) Later, on August 25, 2005, Dr. Desai assessed Overton's GAF at 50. (R. 521-28.) The differences between the scores are significant. As the ALJ stated, a GAF score between 41 and 50 indicates serious symptoms or serious impairment in functioning, while a score between 51 and 60 indicates moderate symptoms or moderate difficulties in functioning. (R. 30.) As the ALJ noted, "[c]learly, this disparity sheds some doubt as to the reliability of" Dr. Kirmani's GAF estimates. (R. 30.)

Third, the ALJ declined to afford great probative weight to Dr. Kirmani's opinion regarding Overton's concentration, persistence, and pace because it was inconsistent with the

opinion of Dr. Alfred G. Jonas, a medical expert who testified during the third administrative hearing. (R. 34.) Dr. Jonas conceded the record was "a little bit thin" and "slightly contradictory" but testified that Overton's concentration, persistence, and pace "appears intact" from the record. (R. 712, 718.) Dr. Jonas opined that there was insufficient support in the record for him to agree with the "pessimistic estimations" of Overton's concentration, persistence, and pace. (R. 717.) Dr. Jonas based these opinions, in part, on Overton's ability to travel, attend family events, fish, and visit a casino, all of which he stated are inconsistent with anything more than mild restrictions of activity of daily living. (R. 717-18.) Ultimately, and as the ALJ articulated, Dr. Kirmani's opinion is inconsistent with Dr. Jonas' testimony. Thus, the ALJ had good cause for declining to afford great probative weight to Dr. Kirmani's opinions.

*B. Dr. Desai's Opinions*

The ALJ declined to give any probative weight to Dr. Desai's opinions because Dr. Desai's opinions only concern Overton's condition following her DLI and not Overton's condition between her alleged disability onset date and her DLI. (R. 36.) An ALJ must articulate good cause for disregarding a treating physician's opinion regarding a claimant. Phillips, 357 F.3d at 1240 (citing Lewis, 125 F.3d at 1440). While the case law refers to a "treating physician," the SSA regulations include treating physicians in the broader term "treating source," meaning a claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 416.902. There is no evidence in the record to show that, on or before Overton's DLI, Dr. Desai could reasonably

be labeled as Overton's treating physician or treating source. Dr. Desai first treated Overton on January 20, 2005—after Overton's DLI. (R. 413.) Therefore, contrary to Overton's contention, the ALJ did not need to articulate good cause to decline to afford probative weight to Dr. Desai's opinions because Dr. Desai was not a treating physician prior to Overton's DLI. Ultimately, the ALJ committed no error in declining to afford great probative weight to Dr. Desai's opinions.

## IV. CONCLUSION

Based on the foregoing, the final decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment accordingly and **CLOSE** the case.

It is **SO ORDERED** in Orlando, Florida, this ____ day of September, 2011.

G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
United States Magistrate Judge